IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

NAOMI J. FULTON   PLAINTIFF

V.   Cause No. 1:17-cv-70-GHD-DAS

MISSISSIPPI STATE UNIVERSITY;
DR. PAULA THREADGILL; DR. LINDA
MITCHELL; JULIE RESTER; BRETT HARVEY;
and JAMES RANDALL NEVINS   DEFENDANTS

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS'
SEPARATE MOTIONS TO DISMISS**

Before this court are three separate motions of the Defendants to dismiss the Plaintiff's claims – one filed by the Defendant Mississippi State University ("MSU"), one filed by Individual Defendants Dr. Paula Threadgill and Dr. Linda Mitchell, and one filed by Individual Defendants Julie Rester, Brett Harvey, and James Randall Nevins - [Doc. Nos. 4, 6, 22]. Upon due consideration, the court finds that the Individual Defendants' motions should be granted and that MSU's motion should be granted in part and denied in part.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On October 1, 2008, Plaintiff Naomi Fulton, an African-American woman who resides in Chickasaw County, Mississippi, began her employment with MSU as a salaried program assistant with MSU's Extension Service office in Monroe County. Pl. Comp. [Doc. No 1] at ¶¶ 1, 11. Plaintiff is still employed with MSU, having been transferred to its Extension Service office in Chickasaw County in November 2015. *Id.* at ¶¶ 11, 24-28.

Plaintiff claims that, while she was stationed in the Monroe County office, she endured racial discrimination and sex discrimination at the hands of her co-workers and the Individual Defendants, and was subjected to retaliation from the Defendants for her association and

interaction with an African-American co-worker who alleged that she was subjected to sexual advances by the Defendant Dr. Paula Threadgill. *Id.* at ¶¶ 12-27. Plaintiff claims that after reporting this alleged conduct to MSU, the Defendants ignored her allegations and instead forced her in November 2015 to accept an involuntary lateral transfer to the Extension Service's Chickasaw County office, where she remains employed as a program assistant. *Id.* at ¶¶ 15, 19-27.

Plaintiff filed a Charge of Discrimination with the EEOC on January 1, 2016, asserting solely retaliation discrimination in connection with her lateral transfer, alleging that the transfer was in retaliation for her association with the co-worker who complained of sexual harassment. *Id.* at ¶ 31. She then timely filed her compliant in this matter, complaining of her transfer and asserting claims against MSU and the Individual Defendants for: (1) race discrimination in violation of Title VII; (2) sex discrimination in violation of Title VII; (3) retaliation in violation of Title VII; and (4) for violations of 42 U.S.C. §1983 in connection with her alleged "adverse and hostile employment conditions at [MSU] due to the actions of Defendants and agents and employees thereof." *Id.* at ¶¶ 33-55. The Defendants have now filed three separate motions to dismiss, arguing that Plaintiff's claims for race and sex discrimination must be dismissed for failure to exhaust administrative remedies and because the Individual Defendants cannot be held liable under Title VII, that Plaintiff has not stated a claim for Title VII retaliation, and that Plaintiff's Section 1983 claims should be dismissed due to Eleventh Amendment immunity.

## II.  STANDARD FOR DISMISSAL UNDER RULE 12(B)(6)

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).

In other words, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.' " *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

### III. ANALYSIS

#### A. Plaintiff's Claims against MSU

##### 1. *Title VII Claims for race and sex discrimination*

First, Plaintiff asserts claims in her complaint that she was subjected to race and sex discrimination in violation of Title VII. [Doc. No 1 at ¶¶ 33-38, 45-50]. Before an employee can pursue Title VII claims in a federal district court, however, she must first exhaust her administrative remedies with respect to those claims; exhaustion of administrative remedies

includes filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") to allow an investigation into the allegations. *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). Although a charge of discrimination is liberally construed, lawsuits exceeding the scope of what was contained in a plaintiff's charge should not be condoned and any claims asserted in a complaint that were not contained in the charge must be dismissed. *McClain*, 519 F.3d at 273.

In the case *sub judice*, in her EEOC Charge, Plaintiff solely alleged that she was subjected to discrimination based on retaliation and that she was "transferred / reassigned . . . to another county in retaliation for [her] association with a coworker who made a complaint about sexual harassment." Plaintiff's EEOC Charge [Doc. No. 24].[1] Plaintiff makes no mention whatsoever in her Charge that she was ever subjected to discrimination on the basis of race or sex. In addition, Plaintiff did not check the boxes available for discrimination on the basis of race or sex, and instead solely checked the retaliation box. In fact, nowhere in her Charge does Plaintiff identify her race or the race of anyone else, and the only indication of sex is to the extent it can be inferred from her name. [Doc. No. 24].

Accordingly, before the Plaintiff can proceed on her claims for Title VII race and sex discrimination, the Court must find that an EEOC investigation for those claims could "reasonably be expected to grow out of" the allegations of retaliation in her Charge. *McClain*, 519 F.3d at 273-74. Plaintiff's Charge, however, contains no reference whatsoever to her race or sex, and otherwise contains no grievances that would trigger an investigation by the EEOC into discrimination based

---

[1] Although a copy of the Charge was not filed with Plaintiff's Complaint, the Court may consider it as part of the pleadings because the Charge is "referred to in the plaintiff's complaint and is . . . central to her claim." *Aguiniga v. Delgado*, 2016 WL 3620728, at *2 (S.D. Miss. June 28, 2016) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)); Doc. No. 1 at ¶¶ 29-30. Further, the Court may consider such a document as a matter of public record in the context of a Rule 12(b)(6) motion to dismiss. *Aguiniga*, 2016 WL 3620728, at *2.

on those characteristics. Accordingly, the Court holds that she cannot now pursue her claims for Title VII discrimination on the basis of race or sex. *See Castro v. Texas Dept. of Criminal Justice*, 541 Fed. App'x 374, 379 (5th Cir. 2013) (dismissing plaintiff's claims for race and sex discrimination for failure to exhaust administrative remedies where, in plaintiff's charge of discrimination, plaintiff made no reference to race or sex or any incidents of discrimination based on those characteristics). Plaintiff does not contest that she failed to exhaust her remedies as to these two claims. Accordingly, because she failed to exhaust her administrative remedies, the Plaintiff's claims for Title VII race and sex discrimination shall be dismissed.

2. *Title VII Retaliation Claim*

Next, Plaintiff asserts a claim for retaliation under Title VII, alleging that the Defendants retaliated against her by transferring her from the Monroe County office to the Chickasaw County office for her association with a colleague who complained of sexual harassment. [Doc. No 1 at ¶¶ 39-44].

To make a *prima facie* case for retaliation, the Plaintiff must be able to show (1) that she engaged in a protected activity, (2) that MSU took a materially adverse employment action against her, and (3) that a causal connection exists between her protected activity and the adverse action. *Sabzevari v. Reliable Life Ins. Co.*, 264 Fed. App'x 392, 395-96 (5th Cir. 2008). MSU argues that (1) the Plaintiff does not allege that she engaged in a protected activity, and (2) that even if she does allege that she engaged in a protected activity, the Plaintiff cannot show that MSU took a materially adverse employment action against her. The Court finds that MSU is incorrect on both counts and that the Plaintiff has adequately alleged a prima facie case of retaliation. The Court therefore shall deny MSU's motion to dismiss this claim.

First, the Supreme Court has ruled that Title VII can forbid discrimination on the basis of association with or advocacy for a protected party. *Thompson v. North American Stainless, LP*, 562 U.S. 170, 174-75 (2011); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009); *El–Hajjami v. United Med. Centers*, No. DR-13-CV-070-AM-CW, 2015 WL 11545025, at *6 (W.D. Tex. Apr. 1, 2015). While the precise contours of this protection have not yet been specifically delineated by the Supreme Court or the Fifth Circuit, at this juncture the court finds that dismissal of the Plaintiff's claim on this basis is inappropriate. The Plaintiff's allegations in her complaint potentially place her squarely within this zone of protection – she alleges, and MSU does not deny, that she associated with a co-worker who indeed did complain of sexual harassment and that the Plaintiff was then transferred because of that association. [Doc. No 1 at ¶¶ 12, 15-21, 39-44]. Thus, the co-worker was indisputably a protected party under Title VII and the Plaintiff potentially engaged in protected activity by associating with the co-worker. *Barrett*, 556 F.3d at 511. Accordingly, the Court cannot rule at this juncture that the Plaintiff did not engage in protected activity.

In addition, despite MSU's argument to the contrary, it is clear that an involuntary transfer from one location to another - even a lateral transfer that involves no reduction in pay - can at this juncture qualify as a materially adverse employment action sufficient to enable the Plaintiff to make out a *prima facie* case of retaliation and survive a motion to dismiss. To establish an actionable materially adverse employment action in a Title VII retaliation case, a plaintiff must show that the employment action has produced an injury or harm. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In other words, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable worker from associating with the subject co-worker. *Id.* In

a transfer or reassignment situation, whether or not a transfer is materially adverse depends upon the circumstances of that particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Id*; *Waters v. City of Dallas*, No. 3:11CV540, 2012 WL 5363426, at *17 (N.D. Tex. Nov. 1, 2012).

While it is correct that involuntary lateral transfers often do not ultimately rise to the level of being materially adverse, the Plaintiff here has sufficiently alleged facts that, if true, allow her at this juncture to state a claim for retaliation regarding her involuntary transfer. *See, e.g., Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 485 (5th Cir. 2008) (holding that "a lateral reassignment to a position with equal pay could amount to a materially adverse action in some circumstances"); *Johnson v. Watkins*, 803 F. Supp. 2d 561, 574 (S.D. Miss. 2011) (finding that a school employee's lateral transfer from a middle school to an elementary school was materially adverse). Specifically, the Plaintiff alleges that, when she was transferred and arrived at the Chickasaw County office location, the Site Coordinator (effectively the site or office manager) had no office space for her and that she therefore was forced to sit with the secretary for nearly six months, which she was not required to do at the Monroe County location and which forced her to put her work materials in storage at her own expense, and that as a result her job performance suffered (which could impact her ability to gain promotion and effectively serve as a demotion, which is clearly a materially adverse action). While the Court finds that these allegations are perhaps tenuous, taking them as true and given the fact that (1) the transfer was indisputably involuntary, (2) the Plaintiff alleges she suffered some ill effects that could qualify as harm, and (3) a reasonable employee might find the transfer's effects to be materially adverse to the extent that it might have dissuaded association with the subject co-worker, the Court finds that the

Plaintiff has adequately pled a case for Title VII retaliation against MSU based on her association with the subject employee, and this claim shall therefore proceed.

    *3.    Section 1983 Claims*

MSU asserts that it is immune from the Plaintiff's Section 1983 claims under the Eleventh Amendment. The Court agrees.

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State." U.S. Const. Amend. XI. The Eleventh Amendment provides assurance to states that "non-consenting states may not be sued by private individuals in federal court." *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 532 U.S. 356, 363 (2001). This immunity encompasses "suits by citizens against their own states" and extends to a state agency, department, or entity deemed an arm or alter ego of the state. *Id.* at 363; *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002); *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 318 (5th Cir. 2001).

It is well settled that MSU is an arm of the State of Mississippi, that it has retained its sovereign immunity against federal court claims of this nature, and that, as a result, it is entitled to Eleventh Amendment immunity unless an exception applies. *See* Miss. Code § 37–113–3; *Jagnandan v. Giles*, 538 F.2d 1166, 1173-78 (5th Cir. 1976) (a suit against MSU is a suit against the State, as any recovery would come from the State).

The Plaintiff does not challenge MSU's assertion of Eleventh Amendment immunity, and does not identify any exception to its application, other than to note that such immunity has been abrogated for Title VII suits. MSU, however, does not assert that it is immune from the Plaintiff's

Title VII claims, but rather that the immunity applies solely to the Plaintiff's claims under Section 1983. The Court therefore finds the Plaintiff's argument to be a moot and irrelevant point, and that MSU is thus immune pursuant to the Eleventh Amendment from the Plaintiff's Section 1983 claims.[2] Accordingly, the Plaintiff's claims against MSU under Section 1983 shall be dismissed.

### B.     Plaintiff's Claims Against the Individual Defendants

The Plaintiff has asserted identical claims against the five Individual Defendants, for race and sex and retaliation discrimination under Title VII, and for violations of Section 1983. The Individual Defendants have filed two separate motions to dismiss the Plaintiff's claims – the first motion is filed by Defendants Juli Rester, Brett Harvey, and James Randall Nevins [Doc. No. 4], and the second motion is filed by Defendants Dr. Paula Threadgill and Dr. Linda Mitchell [Doc. No. 22]. Both motions assert the same grounds for dismissal, and the Court finds that they should be granted.

#### 1.     *Claims for Race and Sex Discrimination and Retaliation Under Title VII*

The Plaintiff asserts three claims under Title VII against the Individual Defendants - race discrimination (Doc. No. 1 at ¶¶ 33 - 38), retaliation (Doc. No. 1 at ¶¶ 39 - 44), and sex discrimination (Doc. No. 1 at ¶¶ 45 - 50). The Individual Defendants argue that the Plaintiff cannot maintain Title VII claims against them because they are not the Plaintiff's employer (MSU is her employer), but rather are the Plaintiff's co-employees and/or supervisors. The Court agrees and finds that because none of the Individual Defendants served as the Plaintiff's employer, the Plaintiff cannot state a Title VII cause of action against any of them.

The Plaintiff is not, and indeed does not claim to ever have been, an employee of any of

---

[2]     In addition, to the extent that the Plaintiff implies that MSU can be liable under Section 1983 through a theory of respondeat superior, the United States Supreme Court has clearly ruled that there is no respondeat superior liability under Section 1983. *Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658, 691 (1978); *Salcido v. Univ. of S. Miss.*, 557 Fed. App'x 289, 295 (5th Cir. 2014).

the Individual Defendants. Rather, she claims that she was an employee of MSU, as are each of the Individual Defendants. [Doc. No. 1 at ¶¶ 10 – 12]. Title VII dictates that it is unlawful for an employer to discriminate against an employee with respect to her compensation or terms, conditions, or privileges of employment, based upon the employee's race and sex. 42 U.S.C. § 2000e-2(a)(1). Title VII relief, therefore, "is only available against an employer, not an individual supervisor or fellow employee." *Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012) (quoting *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003)). An individual, whether in an individual or official capacity, is not subject to liability under Title VII. *Taylor v. Hinds Cnty. Dept. of Human Serv.*, No. 3:12cv729, 2013 WL 5406485, at *3 (S.D. Miss. 2013) (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003)).

An employer, for purposes of Title VII, is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). The Fifth Circuit has made clear that Title VII does not permit a plaintiff to place liability on all who act on behalf of an employer; rather, the statutory language regarding agency incorporates respondeat superior into the statute and thus only the employer may be held liable under Title VII. *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994). In the case *sub judice*, the Individual Defendants are indisputably fellow employees of MSU, are not the Plaintiff's employers, and are thus not subject to Title VII liability. *Id.* Accordingly, the Plaintiff's claims against them under Title VII for sex discrimination, race discrimination, and retaliation shall be dismissed.[3]

---

[3] In addition, the Individual Defendants are also entitled to dismissal of the Plaintiff's Title VII claims for race and sex discrimination for the same reasons as MSU, as outlined above. Specifically, the Plaintiff failed to exhaust her administrative remedies by failing to make any reference to those claims, or otherwise reference facts that

2. *Section 1983 Claims*

As noted above, MSU is entitled to Eleventh Amendment immunity from the Plaintiff's Section 1983 claims. In addition, the Supreme Court clearly recognizes that when a state official is sued in his or her official capacity, the real party in interest is the governmental entity, not the named official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In the case *sub judice*, the Plaintiff has solely alleged claims versus the Individual Defendants in their official capacities, specifically pleading that each Individual Defendant's "actions at all relevant times occurred while [he or she] was acting within the scope of employment on the relevant dates," and has not made any individual capacity claims against any of the Individual Defendants. [Doc. No. 1 at ¶¶ 3 – 7]. The Individual Defendants, in their official capacities, are, therefore, entitled to the same protections as MSU under the Eleventh Amendment and immunity thus applies to bar the Plaintiff's claims in their entirety. *Hafer*, 502 U.S. at 25; *Yul Chu v. Miss. State Univ.*, 901 F. Supp. 2d 761, 772 (N.D. Miss. 2012). The Plaintiff's Section 1983 claims against the Individual Defendants shall therefore be dismissed.

C. **Plaintiff's Claims for Punitive Damages**

The Civil Rights Act of 1991 precludes a punitive damages recovery against governments, government agencies, and political subdivisions; because such an award would be improper, the Plaintiff's claims for punitive damages against MSU must therefore be dismissed. 42 U.S.C. § 1981a (b)(1); *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 465-66 (5th Cir. 2001). In addition, to assess punitive damages against an Individual Defendant in his or her official capacity would be tantamount to assessing punitive damages against MSU as well. *See id.* (holding that

---

would prompt an investigation into sex or race discrimination, in her EEOC Charge of Discrimination. *McClain*, 519 F.3d at 273-74; *Castro*, 541 Fed. App'x at 379.

assessment of punitive damages in Title VII claim against sheriff constituted plain error and reversing award even though appellants failed to properly preserve objection). Such a punitive damages award, therefore, would be improper, and all claims for punitive damages against the Individual Defendants in their official capacities shall therefore likewise be dismissed. Accordingly, the Plaintiff's claims for punitive damages against both MSU and the Individual Defendants are dismissed.

## IV. CONCLUSION

As outlined herein, the Court finds that the Plaintiff has stated sufficient facts to maintain, at the present juncture, a claim that the Defendant MSU retaliated against her because of her association with a protected colleague. Accordingly, the Defendant MSU's motion to dismiss the Plaintiff's Title VII retaliation claim against shall be denied.

The Court finds, however, that the remainder of the Plaintiff's claims, including all claims against the Individual Defendants as well as her claims for punitive damages, should be dismissed. Accordingly, MSU's motion to dismiss the Plaintiff's Title VII claims for race and sex discrimination shall be dismissed for failure to exhaust administrative remedies, and her claims against MSU under Section 1983 shall be dismissed pursuant to MSU's 11th Amendment immunity. The Individual Defendants' motions to dismiss shall be granted in their entirety as outlined herein and all claims against the Individual Defendants shall be dismissed.

An order in accordance with this opinion shall issue this day.

THIS, the 29th day of January, 2018.

_____
SENIOR U.S. DISTRICT JUDGE